United States District Court
Eastern District of Michigan
Southern Division

United States of America,

    Plaintiff,                                Criminal No. 21-20067

v.

Hussein Ali Al-Maleki,                Hon. Mark A. Goldsmith

    Defendant.
_____/

## Government's Sentencing Memorandum

In July 2020, Hussein Ali Al-Maleki, the defendant, was approached by Detroit Police Department (DPD) officers while standing in front of a closed business in Detroit. The defendant saw the officers and began to walk away from them while turning the right side of his body away from the officers. The defendant then began running, pulled a loaded gun out of his right pocket, and threw it over a fence as he fled. Officers recovered the gun and after a short foot chase, arrested the defendant. The defendant has prior felony convictions for assault with a dangerous weapon and aggravated stalking. In August 2021—after the defendant committed the instant offense—he was arrested for his

1

involvement in a drive-by shooting that took place at the Dearborn Ice Skating Rink in Dearborn, Michigan. That case remains pending.

The defendant's guidelines are 46 – 57 months. Consistent with the terms of the Rule 11 agreement, the government recommends a sentence at the midpoint of this range. Thus, the government recommends a sentence of 52 months' imprisonment as such a sentence is "sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3353(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008).

## I. Facts and Procedural History

### a. Offense Conduct

On July 16, 2020, the defendant was standing with a group of people in front of a closed business on Decatur Street in Detroit, Michigan when Detroit Police Department (DPD) officers approached the group. (PSR ¶ 10). As the officers approached, the defendant started to walk away while looking back at the officers and turning the right side of his body away from them. (*Id.*) The defendant then began running and a short foot chase ensued. (*Id.*) While he fled, the defendant pulled a gun out of his right pocket and threw it over a fence onto a paved parking lot.

(*Id.*) The DPD officers arrested the defendant and recovered the weapon—a Glock, model 48, 9mm semi-automatic pistol loaded with three live rounds. (*Id.*) The gun also had a defaced serial number. (*Id.*) The officers questioned the group of people and determined that they were there to buy marijuana from an unknown source. (*Id.*)

### b. Charging and Plea

The defendant was charged in a one-count indictment in November 2020 for being a felon in possession of a firearm. (PSR ¶ 3). On October 19, 2021 pleaded guilty to Count 1 of the indictment. (*Id.* at ¶ 6). His sentencing is scheduled for March 8, 2022.

### c. Criminal History

In August 2016, at the age of 16, the defendant was arrested after he attempted to stab his cousin in the stomach. (PSR ¶ 31). The defendant's mother intervened and the defendant cut his mother's finger. (*Id.*) He was placed on in-home probation which he completed successfully. (*Id.*)

In June 2017, the defendant pleaded guilty to disturbing the peace. (*Id.* at ¶ 32). Charges of assault with a dangerous weapon, assault, and malicious destruction of personal property connected to the

3

same incident were dismissed. (*Id.*) The defendant was placed on probation with a tether and completed probation successfully. (*Id.*)

In October 2018, the defendant was charged with domestic assault and battery after a disturbing set of incidents involving an ex-girlfriend. (*Id.* at ¶ 33). The defendant called the victim—an ex-girlfriend—and told her that he would "shoot up her house and kill her and her family." (*Id.*) A few days later, the defendant knocked on the victim's window but was chased away by her father. (*Id.*) The defendant then sent the victim a picture of a gas can and stated that he would burn down the house. (*Id.*) Three days after that, the defendant showed up at the victim's school, put his arm around her neck, and tried to force her to leave. (*Id.*) The victim reported that the defendant told her that he would stab her in the neck with a set of keys that he had in his hand. (*Id.*) The assistant principal arrived and told the defendant to leave the property. (*Id.*) The defendant then proceeded to follow the victim inside the Livonia Career Center and punched her in the face. (*Id.*) The defendant then fled but was arrested soon thereafter. The defendant pleaded guilty to domestic assault and battery on October 30, 2018 in connection with the incident. (*Id.*) He was sentenced to 12 months'

4

probation and 15 days' jail with credit for time served. (*Id.*) In June 2019 the court held a probation violation hearing, and several days later the defendant's probation was closed without improvement. (*Id.*)

In November 2018, the victim contacted police because the defendant—her ex-boyfriend—had followed her to work at the Z-Grill in Livonia, Michigan. (*Id.* at ¶ 35). The victim told police that the defendant had come there the day before, too, and said to her "it's either we die together or you get back with me." (*Id.*) A personal protective order (PPO) had been served on the defendant—with the victim being the protected person—on October 22, 2018. (*Id.*) Less than two hours after the first call, the victim called police again because the defendant came back to the Z-Grill, grabbed her by the waist, and attempted to pull her outside stating, "just come outside and talk to me…,don't make me hit you." (*Id.*) The defendant was eventually arrested in connection with the incident, and when the officer asked the defendant if he knew why he was being arrested the defendant said, "because I'm stalking my girlfriend." (*Id.*) At a preliminary examination scheduled in December 2018 after the arrest, the defendant approached a witness from the restaurant who had been subpoenaed to testify and told him "you better

5

not say anything" a total of three times. (*Id.*) The defendant pleaded guilty to domestic assault and battery and was sentenced to 18 months' probation in December 2018 in connection with this incident. (*Id.*) In June 2019 the defendant's probation was extended by 6 months, and in December 2019 his probation was revoked and he was sentenced to 30 days' custody with credit for time served. (*Id.*) His probation was then closed without improvement. (*Id.*)

On November 5, 2019, the defendant pleaded guilty to assault with a dangerous weapon for his involvement in an altercation that occurred May 2019 in which a victim was struck in the back of the head with a baseball bat and punched several times. (*Id.* at ¶ 36). He was sentenced to two years' HYTA probation in December 2019. (*Id.*) A motion for discharge of probation is pending before the court because of the defendant's charges in this case. (*Id.*)

In September 2019, the victim of the October 2018 incident contacted the police because the defendant was continuing to have contact with her. (*Id.* at ¶ 37). Between September 9, 2019 and September 11, 2019, the defendant sent the victim a total of 87 text messages and called her once. (*Id.*) The defendant also threatened to

send a sexually explicit video of the victim to her father and post it on Pornhub.com. (*Id.*) The defendant was later arrested and in December 2019 was sentenced to 5 years' probation for aggravated stalking. (*Id.*) In December 2021, the defendant's term of probation was closed due to the instant offense. (*Id.*)

Then in August 2021 – after the defendant committed the instant offense – the defendant was arrested for his involvement in a shooting that took place at the Dearborn Ice Skating Center on August 25, 2021. (*Id.* at ¶ 46). One victim was struck in the shoulder. (*Id.*) The defendant was arrested the day after the incident and was unable to post the $1,000,000 bond. (*Id.*) The case remains pending. (*Id.*)

## II. Section 3553(a) factors warrant a sentence of 52 months' imprisonment.

The government's requested sentence of 52 months' imprisonment is supported by the 3553(a) factors. On the other hand, the defendant's requested sentence of a sentence "below the guideline range" is not supported by these same factors. (ECF No. 21, PageID.132).

### a. Nature and circumstances of the offense

Prior to this offense, the defendant repeatedly stalked, harassed, and physical assaulted individuals, some of whom appear to be former

7

girlfriends.[1] The defendant incurred two felony convictions in 2019 in connection with some of these offenses. Then in August 2020—while he was still on probation for his prior offenses—he tried to run from the police while throwing a loaded handgun with a defaced serial number over a fence. These circumstances demonstrate a complete lack of respect for the law and they warrant the 52-month sentence that the government seeks.

### b. History and characteristics of the defendant

The defendant's escalating pattern of violent, criminal behavior is extremely concerning. So is his pattern of violating prior terms of probation by committing new criminal offenses. These patterns support a sentence *at least* at the mid-point the defendant's guideline range, or 52 months' imprisonment. The defendant's requested sentence below his guideline range does not appropriately account for the serious and escalating behavior that is reflected in the defendant's history and characteristics.

---

[1] It is unclear to the government whether the prior incidents involving ex-girlfriends refer to the same or different victims.

Moreover, the defendant was arrested for his alleged involvement in a shooting that took place *after* his commission of the instant offense. While that case remains pending, and the defendant has yet to incur a conviction for this incident, it is worth noting the allegations in that case are very serious, and the fact that they occurred after the incident giving rise to the defendant's charges in this case is equally troubling.

The defendant's history and characteristics warrant a 52-month sentence.

### c. Seriousness of the offense, promotion of respect for the law, and just punishment for the offense

This was a very serious offense, particularly considering the defendant's very recent history with the criminal justice system and the fact that the defendant ran from the police during the commission of the offense. A sentence of 52 months' imprisonment would adequately reflect the seriousness of the defendant's conduct, as well as promote respect for the law and provide a just punishment for his offense.

### d. Adequate deterrence and protection of the public

The defendant is a young man. He still has most of his life ahead of him even after a 52-month custodial sentence. But he must course-correct now. The Court should fashion a sentence that will adequately

deter the defendant from committing similar crimes in the future. A 52-month sentence is appropriate for this reason, particularly because the prior sentences the defendant received for his past offenses—which have largely been sentences of probation—have done nothing to deter him from future criminal activity.

Moreover, the combination of the defendant's escalating pattern of physical violence in past cases with his possession of a loaded firearm in this case is a dangerous one. So a 52-month sentence is further warranted to protect the public from the defendant's dangerous behavior.

### e. Providing the defendant with needed educational or vocational training, medical care, or other corrective treatment in the most effective manner

The defendant reports struggling with substance abuse in the past and has previously been referred for inpatient substance abuse treatment. (PSR ¶¶ 68 – 72). Based on this, the defendant should avail himself of any available substance abuse treatment available to him within the Bureau of Prisons (BOP). It also appears that the defendant never received a high school diploma or GED. (*Id.* at ¶¶ 73 – 75). So the defendant could also obtain his GED, or enroll in other educational

programs, while in BOP custody as well. A 52-month sentence is appropriate to achieve these objectives.

### f. The kinds of sentences available and the need to avoid unwanted sentencing disparities among defendants

Finally, the requested sentence of 52 months is available and in line with the range of sentences that similarly situated defendants receive.

### III. Conclusion

The government recommends a sentence of 52 months' imprisonment.

Respectfully submitted,

DAWN N. ISON
United States Attorney

s/ *Erin L. Ramamurthy*
Erin L. Ramamurthy
Assistant U.S. Attorney
211 West Fort Street, Suite 2001
Detroit, MI  48226
(313) 226-9788
erin.ramamurthy@usdoj.gov

Dated: March 1, 2022

## Certificate of Service

I certify that on March 1, 2022, I electronically filed the foregoing document with the Clerk of the Court for the Eastern District of Michigan using the ECF system, which will send notification of the filing to all users of record.

s/ *Erin L. Ramamurthy*
Assistant U.S. Attorney
